UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FURUKAWA ELECTRIC NORTH AMERICA, INC.; OFS FITEL LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>ANTARES DEVELOPMENT INTERNATIONAL LLC,<br><br>　　　　　　Defendant. | Civil Action No. 05-11665 RGS |

## OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS, OR IN THE ALTERNATIVE, TO EXTEND TIME TO ANSWER COMPLAINT

Plaintiffs Furukawa Electric North America, Inc. and OFS Fitel LLC (collectively, "OFS") hereby oppose Defendant Antares Development International LLC's ("Antares'") Motion to Stay Proceedings, or In the Alternative, to Extend Time To Answer Complaint (the "Motion to Stay"). Antares' Motion to Stay should be denied because OFS has the right to enforce its patent rights against all infringers simultaneously, and should not be forced to wait for serial relief from each. For the same reason, OFS' claims against Antares should not be delayed pending the resolution of Yangtze Optical Fibre and Cable Company Ltd.'s ("YOFC's") Motion to Dismiss pending in a separate patent case filed by OFS.

## BACKGROUND

OFS is an optical fiber innovator and manufacturer headquartered in Norcross, Georgia. As a successor in interest to Lucent Technologies' optical fiber business (which, in turn, was a

1

successor to AT&T), OFS holds a number of key patents to optical fiber products and the methods for manufacturing them.

Antares, a Massachusetts Limited Liability Company, is responsible for promoting and selling fiber optic products manufactured by YOFC, a company based in China, which touts itself as the "third largest fibre manufacturer in the world." Declaration of E. Page Wilkins, Esq., dated September 15, 2005 ("Wilkins Decl."), submitted herewith, Ex. A. The YOFC products promoted and sold by Antares are alleged to infringe OFS' patents.

On June 10, 2005, OFS filed a patent infringement suit against YOFC alleging that YOFC has infringed and is infringing certain of OFS' patents through its use, offer for sale and sale of fiber optic products in the United States. *See Furukawa Electric Company of North America, et al. v. Yangtze Optical Fibre and Cable Company Ltd.*, civil action no. 05-11219-RGS ("YOFC Case"). OFS served the Summons and Complaint in the YOFC Case on the president of Antares, Crawford Cutts. Mr. Cutts is the exclusive marketing, sale and technical operations agent for YOFC in North America. *See* Wilkins Decl., Ex. B. YOFC filed a Motion to Dismiss, alleging that service on Mr. Cutts was insufficient. OFS opposed that motion. Oral argument is scheduled for November 9, 2005. If YOFC's motion is granted, OFS will likely be forced to serve YOFC under the Hague Convention—an exercise that could take many months. *See* Wilkins Decl., Ex. C.

On August 11, 2005, OFS filed this patent infringement suit against Antares, alleging that Antares infringes certain of OFS' patents by selling and/or offering for sale YOFC's infringing products in the United States. Antares' answer was due on September 1, 2005. Instead of answering, Antares filed a Motion to Stay, seeking a stay of this case pending the outcome of a patent case in Georgia, or in the alternative, that the YOFC and Antares Cases be placed on the

same track.  As discussed more fully below, Antares' Motion to Stay should be denied because OFS has the right to enforce its patent rights against all infringers simultaneously, and should not be forced to wait for serial relief from each.

### Argument

I. **The Court Should Not Stay This Matter.**

Antares requests that this Court stay this action in favor of an action captioned *Furukawa Electric North America, Inc. v. Sterlite Optical Technologies, Inc., et al.*, civil action no. 1:02-CV-2149 CAP, currently pending in the Northern District of Georgia (the "Georgia Action").[1] *See* Motion to Stay, p. 3.  The Court should deny this request because: (1) the Georgia Action involves neither the same defendant nor the same infringing product or processes as this case; (2) the Georgia Action involves only three of the four patents asserted in this case; U.S. Patent No. 4,820,322 (the "'322 patent") is not even asserted in the Georgia Action; (3) Antares' argument regarding the possible efficiencies to be gained through issue preclusion is without merit, (4) there is no trial date set in the Georgia Action, and it could be years before that matter is litigated to conclusion; (5) the absence of the '322 patent from the Georgia Action would require that this case proceed in any event; and (6) OFS would be severely prejudiced should it be forced to endure Antares' infringement of its patents during the indefinite period that this matter would be stayed.

In deciding a motion to stay, a court "should consider the extent to which the issues and parties are identical and, where they are not substantially identical, a court *would not be justified* in granting a stay of one of the proceedings."  *Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, 7 U.S.P.Q. 2d 1910, 1910 (W.D.N.Y. 1988) (emphasis added); *see also Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-83 (Fed. Cir. 1989) (reversing District Court's grant

---

[1] Antares' motion mis-identifies the case caption as *Fitel USA Corp. v. Fibercore, Inc.*

3

of a stay because requirement that same parties and same issues are involved in the matters not satisfied); *Tuff Torq Corp. v. Hydro Gear Ltd. et al.*, 882 F.Supp. 359, 365 (D. Del. 1994) (holding that it would be "fundamentally unfair" to stay litigation when same parties could not participate in both).

Neither the parties nor the issues in the Georgia Action are the same as those presented in this case. The Georgia Action involves a completely different defendant, with no connection or relation to Antares.[2] The Georgia Action involves different infringing processes and products. There will, therefore, be no overlap in the infringement analysis and no guarantee that the same claim terms will be at issue. Moreover, the '322 patent is not even asserted in the Georgia Action. There cannot be any serious contention that the parties and issues in the Georgia Action and this case are "substantially identical" and the Court should, therefore, reject Antares' request to stay this matter. *See Kahn*, 829 F.2d at 1081-82 (discussing how two suits involving same patents asserted against two infringers still present different issues which preclude staying one in favor of another); *see also Modern Computer Corp. v. Ma, et al.*, 862 F. Supp. 938, 949 (E.D.N.Y. 1994).

Defendant's argument that this matter and the Georgia Action have common validity issues is a red herring. *See Filtrol Corp. v. Kelleher*, 467 F.2d 242, 245 (9th Cir. 1973) (upholding district court's denial of stay and recognizing that the potential of one matter to invalidate the patents-in-suit was not sufficient grounds for staying second case because infringement issues would still need to be resolved if patents found valid and that there was no guarantee that invalidity determination would have preclusive effect in second matter). If accepted, it would mean that any patent-holder would be limited to suing only one defendant at a

---

[2] In contrast, *K-Tel Int'l, Inc. v. Zuro*, 176 U.S.P.Q. 464 (D. Minn. 1971) (cited by Antares), involved two "mirror-image" suits (one for infringement and one for a declaratory judgment of non-infringement and invalidity with respect to the same patents and parties).

4

time, since in almost every patent case allegations of invalidity are raised as a defense to infringement. The case of *Consolidated Aluminum Corp. v. Hi-Tech Ceramics, Inc.*, cited by defendants in support of their argument regarding an overlap in validity issues, dealt with a situation clearly distinguishable from the present circumstances. In that case: (1) the plaintiff *conceded* to a stay on validity issues; (2) the same patents were at issue in both matters; and (3) the competing matter had already been tried and the parties were awaiting a decision. *See* 7 U.S.P.Q. 2d at 1910-11.

Staying this case will not save any time or effort for the Court, counsel or the parties. Rather, a stay will significantly delay the resolution of OFS' claims against Antares. A date has not been set for the *Markman* hearing in the Georgia Action and, consequently, the timing of other milestones in that matter, which will be triggered by the Court's issuance of its *Markman* decision, remains indefinite. *See* Wilkins Decl., Ex. D.[3] Moreover, the schedule in the Georgia Action does not even reach pre-trial and trial dates.[4] Also, there is a high likelihood that the losing party in the Georgia Action will appeal, further delaying a final resolution of that matter. Of course, the Georgia Action will not render a timely decision with respect to the '322 patent, since it is not even at issue in that case.

Likewise, a stay in favor of the Georgia Action will not promote judicial efficiency. The Georgia Action will not resolve any factual questions regarding Antares' infringement of OFS' patents. The Georgia Action will not necessarily resolve any of the claim construction issues regarding the patents common to both matters because different infringing products and processes may put different claim terms in contention. In any event, the preclusive effect of

---

[3] The Court in the Georgia Action has been asked to interpret over thirty-five disputed claim terms in its *Markman* decision. *See* Wilkins Decl., Ex. E.

[4] The Georgia Action is in a materially different position than the favored litigation in *Consolidated Aluminum* (cited by YOFC), where the matter had already been tried and the parties were only awaiting a decision. *See Consolidated Aluminum*, 7 U.S.P.Q. 2d at 1910-11.

5

claim construction in the Georgia Action is far from certain, even with respect to terms that might be at issue in both cases.[5] Finally, and most obviously, the Georgia Action will not provide any efficiency with respect to the '322 patent, which is not at issue in that case. Thus, Antares and OFS will still have to litigate many factual and legal issues in this Court, no matter what happens in the Georgia Action. *See*, *e.g.*, *Filtrol Corp.*, 467 F.2d at 244-45.

Finally, Antares' request for a stay should be rejected because if a stay is granted, OFS will be severely prejudiced. If this action is stayed, OFS will be unable to prevent Antares from infringing its patent rights.[6] OFS will, therefore, risk *per se* irreparable harm for the years that it will take for the Georgia Action to be litigated to finality. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003) (*per se* irreparable harm)**.**

For all of these reasons, the Court should reject Antares attempt to avoid a full and fair adjudication of OFS' claims and deny the request to stay this matter in favor of the Georgia Action.

## II.     **The YOFC and Antares Cases Should Not Proceed on the Same Track.**

Placing the YOFC and Antares Cases on the same track as the YOFC Case will prejudice OFS by preventing it from enforcing its patent rights against Antares for an indefinite period. Contrary to Antares' argument, placing the YOFC and Antares Cases on the same track will not promote efficiency. There is a motion to dismiss pending in the YOFC Case regarding

---

[5] The law regarding whether a prior claim construction should be given preclusive effect in later proceedings is far from clear. *Callicrate v. New Age Industrial Corp., Inc.*, 2005 WL 1027095 (D. Kan. 2005) (collecting cases). The Federal Circuit has provided little guidance, and courts are split on the issue. *See id.* Here, it is impossible to predict whether any claim construction from the Georgia Action will be given preclusive effect because the decision will be based, in part, on whether the case ends with a "final judgment on validity or infringement." *See*, *e.g.*, *RF Delaware v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed. Cir. 2003) (prior claim construction ruling had no preclusive effect where parties of prior action settled after partial summary judgment); *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F. Supp. 2d 464, 466-67 (W.D. Va. 2001) (doctrine of collateral estoppel cannot apply to Markman determination when prior action ended in settlement).

[6] Unless, of course, Antares is willing to stipulate to entry of a Preliminary Injunction which prevents them from selling or offering for sale any of the YOFC products accused of infringing OFS' patents during the stay.

sufficiency of service on YOFC. Therefore, there is no certainty when that case will move forward. If service is deemed insufficient, OFS will be required to serve YOFC under the Hague Convention which could take anywhere from four to nine months. *See* Wilkins Decl., Ex. C. If YOFC's Motion is granted, the Antares suit will languish as the Hague Convention process moves forward. This is an unreasonable delay considering service of process on Antares is not even at issue here. Furthermore, allowing Antares to benefit from the delay in the YOFC Case is both unfair and unreasonable and, contrary to Antares' assertion, will force the parties to engage in unreasonably expensive and inefficient piecemeal litigation.[7]

Regardless of the outcome of the motion to dismiss, placing the cases on the same track will put both cases on hold until at least November, when oral argument on YOFC's motion to dismiss is scheduled. Such a result will prejudice OFS. OFS is entitled to enforce its patent rights against all infringers simultaneously. Accordingly, placing the Antares Case on the same track as the YOFC Case will *delay* both cases indefinitely thereby prejudicing OFS.

Antares relies on the "Related Civil Cases" rule as the bases for its argument that the YOFC and Antares Cases should be placed on the same track. However, Local Rule 40.1(G) has no such requirement. Rather, it requires claimants to identify related cases when filing a new action so that the clerk can assign the case to the same judge. *See* D. Mass. R. 40.1(G). There is no requirement that related cases be placed on the same "track." Furthermore, the only case cited by Antares for this proposition—*Bailey v. Dart Container Corp. of Michigan*, 980 F. Supp. 584 (D. Mass. 1997)—involves a motion for sanctions against an attorney who failed to identify a related case on a civil cover sheet. There was no discussion about placing the related cases on the same track.

---

[7] If Antares' admission that the cases are "virtual identical" is taken as true, and if YOFC agreed to drop its Motion to Dismiss or Stay and submit to this Court's jurisdiction, OFS would not disagree that judicial economy might be best served by placing the cases on the same track.

7

Considering there is no requirement that related cases be placed on the same track and, more importantly, that OFS will be prejudiced by serious delay if the cases are placed on the same track, the court should deny Antares' motion.

## CONCLUSION

For the reasons set forth herein, Antares' motion should be denied.

Dated: September 15, 2005

                      Respectfully submitted,

                      By: /s/ E. Page Wilkins
                          Sarah Chapin Columbia (BBO# 550155)
                          Carlos Perez-Albuerne (BBO# 640446)
                          E. Page Wilkins (BBO# 654535)
                          CHOATE, HALL & STEWART
                          Two International Place
                          Boston, Massachusetts 02110
                          (617) 248-5000

3982583v1