UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FURUKAWA ELECTRIC NORTH AMERICA, INC.; OFS FITEL LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> ANTARES DEVELOPMENT INTERNATIONAL LLC, <br><br> Defendant. | Civil Action No. 05-11665 RGS |

## DECLARATION OF E. PAGE WILKINS, ESQ.

I, E. Page Wilkins, hereby depose and state as follows:

1.    I am an attorney, licensed to practice in the Commonwealth of Massachusetts, at the law firm of Choate, Hall & Stewart, counsel to Plaintiff, Furakawa Electric North America, Inc. and OFS Fitel LLC.

2.    Attached hereto as **Exhibit A** is a true and accurate copy of a page from YOFC's website, available on September 15, 2005 at http://www.changfei.com.cn/cf/cf_english/index.asp.

3.    Attached hereto as **Exhibit B** is a true and accurate copy of YOFC's Press Release, *YOFC Appoints Sales, Marketing and Technical Talent in North America*, dated January 24, 2005.

4.    Attached hereto as **Exhibit C** are true and accurate copies of promotional material from international process servers providing service of process in China.

5.    Attached hereto as **Exhibit D** is a true and accurate copy of the Court's April 19, 2005 Order in *Furukawa Electric North America, Inc. v. Sterlite Optical Technologies, Inc., et, al.,* civil action no. 1:02-CV-2149 CAP.

6.    Attached hereto as **Exhibit E** is a true and accurate copy of the Joint Claim Construction Statement submitted to the Court in *Furukawa Electric North America, Inc. v. Sterlite Optical Technologies, Inc., et, al.*, civil action no. 1:02-CV-2149 CAP on July 29, 2005.

Signed under the pains and penalties of perjury this 15th of September, 2005.


_____/s/ E. Page Wilkins___
                E. Page Wilkins, Esq.


3981013v1

2

# Exhibit A

English | 中文

# 长飞光纤光缆有限公司
## YANGTZE OPTICAL FIBRE AND CABLE COMPANY LTD.(YOFC)

About us    Press    Products    Technoloies    FTTH & Solutions    Customer & Service    Quality & Environment    Career    Contact us

## About us

- Company Profile
- Company Objective
- Company Mission
- Company Culture
- Company Milestones
- Company Sales









## ➔ Sales

In 2004, YOFC sold 6.6 million km fibres and 125,000 km of cables. The output and sales has kept No.1 in the sector in China for 13 consecutive years. Toally YOFC has sold 17 million km of fibres of which more than 30% are exported to overseas markets, and has sold nearly 600,000 sheath-km of cables (equal to 15 million fibre-km). YOFC is now the third largest fibre manufacturer and the fifth largest cable manufacturer in the world.



YOFC Fibres and Cables Sold Overall the World

YOFC products have been sold to the countries or territories that are painted in red and yellow.

Copyright ® 2005 Yangtze Optical Fibre and Cable Company Ltd(YOFC)
All rights reserved



鄂ICP证 030319

# Exhibit B

 **Yangtze Optical Fibre and Cable Company, Ltd.**

**PRESS RELEASE**                                           **JANUARY 24, 2005**

### YOFC Appoints Sales, Marketing and Technical Talent in North America

**Wuhan, China, JANUARY 24, 2005**- Yangtze Optical Fibre and Cable Company, Ltd. (YOFC) manufacturer and worldwide supplier of industry-leading optical fiber and cable, today announced the establishment of it's North American Sales, Marketing and Technical Operations Team: Mr. Crawford Cutts, formerly VP, Business Development at SpecTran Corporation and Director, Strategic Accounts at Juniper Networks; and Mr. Bill Beck, formerly President of SpecTran Specialty Optics and co-founder and CEO of Verrillon. YOFC appointed Cutts and Beck exclusive sales agents for North America.

"Bill and I are very pleased to be representing YOFC in North America for the sale of single mode, multimode fiber and specialty fiber designs", Cutts said. "The Plasma Chemical Vapor Deposition (PCVD) technology used by YOFC is widely recognized in the industry as the most effective process for the precise manufacturing of complex index profile optical fibers such as 10 GbEthernet 50 micron multimode, low water-peak single mode and new specialty designs. YOFC has been supplying this high quality fiber to customers in the US continuously for over 10 years."

"Crawford will focus on multimode and single mode fiber for traditional communications applications; I will focus on supporting customers requiring specialty designs", Beck said.

Yan Changkun, Sales Director of YOFC noted, "Crawford and Bill have many years of experience in this industry and can quickly establish a strong position for YOFC in the North American market. They have a comprehensive understanding of fiber optic technology and applications. Their strong relationships with the customer base make them a perfect fit for our customer-focused organization."

Cutts was Vice President of Business Development at SpecTran Corporation from 1990 to 1996. He assumed the position of President of General Photonics, a SpecTran and General Cable joint venture manufacturing optical cable, until SpecTran was sold to Lucent in 1999. From 2000 to 2003, Mr. Cutts was Director, Strategic Accounts at Juniper Networks.

Beck began his career in fiber optics in 1981. He was a pioneer in the development of specialty fiber applications as President of Ensign-Bickford Optics, SpecTran Specialty

Optics and most recently as co-founder and CEO of Verrillon. He has been consulting in fiber optics, sensors and lasers for the past two years and is Secretary of the New England Fiberoptics Council.

**About YOFC**

Yangtze Optical Fibre and Cable Company, Ltd. (YOFC) was established in 1988 by Philips of the Netherlands and China's Ministry of Post and Telecommunications. Today, YOFC is the largest supplier of optical fiber and cable to the Chinese market and exports its products to the United States and several countries in the Americas, Europe and the Far East. Located in China's "Optical Valley" in Wuhan, YOFC operates the world's second largest optical fiber manufacturing facility using the patented and proprietary Plasma Chemical Vapor Deposition process. The PCVD process is widely recognized as the industry's most effective process for the precise manufacturing of complex index profile fibers such as high bandwidth multimode, dispersion controlled or low water peak single mode and other special designs

US Contact:                                             China Contact:

Crawford Cutts                                          Yan Changkun
Director, North American Sales                          Sales Director
YOFC                                                    YOFC
Bentwood Drive, Suite 50                                4 Guanshan Er Road
Sturbridge, MA 01566                                    Wuhan, China 430073
+1.508.868.0052                                         +86 27 878 2541 2400
crawfordcutts@yahoo.com                                 yofcsale@public.wh.hb.cn

# Exhibit C

# SERVICE OF PROCESS (TAIWAN/CHINA)



# SERVICE OF PROCESS

Generally service of process in Taiwan(ROC), by our investigators, takes from 14-21 days. In the event of specific time limitations, service can be effected in 5-10 days (after we receive all documents); but this type of express service generally requires a surcharge.

Service of Process in **China(PRC)**generally must be routed through a governmental agency and as such, time limitations may vary (up to nine months). This is due to the fact that China is a signatory to the Hague Convention and as such, certain procedures are followed. There are some alternatives, which may be discussed on a case to case basis. One of those alternatives is to have one of our investigators personally serve your documents without filing them with the government (China). In the event that we follow this procedure, we would then take the proof of service to Hong Kong and have it notarized when completed. This is the normal procedure that we follow and takes 10 to 15 days.

Our standard procedure in serving foreign documents in **Taiwan(ROC)**, is to attempt service three times, in at least three days.  If service is not completed after the third attempt, we will then leave a copy of all documents (sub service) at the official address of the person/entity being served, and send a copy by Taiwan Registered Mail(United States Registered Mail will not suffice), return receipt requested. When conducting a standard service of process in Taiwan , it is not

necessary to translate (into Chinese) the documents (this is based on information from the U.S. State Department) being served, into Chinese. China (PRC) does require a translated copy of the documents, in that they are signatories to the Hague Convention and follow certain specified guidelines, unless we do a personal service without government filing. Thus, with our method of service there is no requirement for documents to be translated

It is necessary for us to have the official Chinese name of the person or entity being served, in that all registered companies in Taiwan and China, are registered under an official Chinese name. In the event that the client does not have this information, it can be obtained through our investigative process, prior to serving the documents (at an additional cost). The investigative process will also confirm the current and correct registered address of the person/entity being served, their registered agent for service of process and their current legal standing. This is why it is important to use a local firm such as ours, instead of an outside agency not based in Taiwan(ROC) or China(PRC), to serve legal documents. **Keep in mind that in Taiwan it is not necessary to have any type of government involvement in the service of process, but there is a specific procedure to follow.** Routing documents through government sub-contractors is time consuming, expensive and not necessary in Taiwan, Hong Kong or on a case to case basis in China. Furthermore, there are certain legalities governing process servers which may invalidate your service, if not properly followed. If the company that you retain to handle your service of process is not registered in Taiwan, you could have a future problem with validation of the service. We clearly understand both the local culture and the appropriate laws, enabling us to professionally meet our clients expectations. Our investigators are registered and licensed.

After service has been completed, we will execute the proof of service, which has been provided to us by the client and return same by overnight mail.  If requested by the client, we will have the proof of service notarized at the American Institute in Taiwan (AIT) or in the case of a service being conducted in China, at the nearest official Notary (generally in Hong Kong).

In the event that the client requires a formal Affidavit of Service to be executed in Taiwan, said Affidavit must be executed at the Taipei District Court and formally legalized.  Notarization or legalization generally consumes one full day of an investigators time and when there is such a requirement from the client or court, there is an additional charge for this service which generally ranges from $250.USD to $550.USD. Charges are dependant on the amount of time spent in completing the process. Notarization is often times a requirement by the judicial entity of jurisdiction and in any event, it is highly recommended by us. One such state that requires notarization is the State of New York. Notarization is highly recommended in that it tends to validate the service.

[GENERIC INTERNATIONAL PROOF OF SERVICE]

When there is a situation which requires Letters Rogatory, then there are certain

procedures which must be followed, utilizing diplomatic channels and specified governmental agencies in the country of service. Process of Service involving Letters Rogatory are time consuming and will take from six months to more than one year to complete. When following the Letters Rogatory procedure, all documents must be translated from English into Mandarin Chinese. In addition to the necessity of utilizing a local attorney, there are also a variety of costs and fees involved in this procedure. We do not generally recommend this procedure unless it has been mandated by the court of jurisdiction or if the case involves a criminal complaint and or the seizure of evidence.

It should be noted that even if the Letters Rogatory procedure is followed, there is still an independent procedure to be followed in Taiwan with reference to the enforcement of foreign court ordered judgments. This independent procedure requires appearances in the Taiwan Court System, representation by a Taiwan attorney and the posting of a cash deposit in the amount of one third of the judgment which is being sought to be recovered. Thus utilizing Letters Rogatory may often provide false assurances and expectations. Each case should be independently researched and assessed.

Should the client require legal services or advice in Taiwan relative to their specific case, we can recommend law firms which have a proven track record of being case specific. In reference to the execution of foreign judgments, it is often necessary to utilize the services of a local attorney to work with investigators that will ultimately execute the seizure orders, issued by the Taiwan judicial system. [EXECUTION OF FOREIGN JUDGMENTS IN TAIWAN]

It should be noted that a standard service of process does not require the services of an attorney in China or Taiwan.

We have provided the above information as a public service and to reduce the time spent by us in replying to the many inquiries we receive, with reference to service of process in Taiwan and China. Because we have operated in Taiwan and the Greater China Region for more than fifteen years, thus, we believe that our experience and expertise are an asset to our clients.

Asiavest is recognized as the premier investigative agency in the Greater China Region. Our list of clients include foreign governments, Fortune 500 companies, publicly traded companies, law enforcement agencies and international law firms. Asiavest is owned and operated by former law enforcement officers from both Asia and the United States. All investigative requests are routed through our United States office, where they are reviewed and forwarded to our regional offices for appropriate action. On site reports are prepared in Chinese and then routed back to our United States office where they are translated into an English formatted report and submitted to our clients. This process ensures a high level of credibility, quality and professionalism.

**THIRD PARTY SERVICE OF PROCESS:** Often times we are retained to serve third party

subpoenas. This process generally consumes the same amount of time as does the service of a summons and complaint. In fact when we serve third party documents, we make a point of reviewing the documents with the recipient and explaining the legal obligations of compliance. We advise the party served that we are based locally and are available to provide them with assistance in complying with the foreign request. We also send a copy of the documents to the recipient by Taiwan registered mail, return receipt requested. This in itself has legal standing in recognizing effective service, but is only effective in conjunction with personal service or legal sub-service. We have noted that most process servers in Taiwan, just serve the documents and provide no explanations or follow-up. This has led to a very high percentage of non-compliance by recipients. In this type of situation it is difficult to enforce court ordered sanctions for non-compliance, considering that the court ordered sanctions would be from a foreign jurisdiction. This is why Letters Rogatory are used in most criminal cases, even though it is a very time consuming process.

Because of our ability to explain the contents of the documents and provide follow-up, our rate of non-compliance is zero. Effecting efficient compliance to third party process requires proper communication and precise follow-up. Third party service of process generally takes from 10-21 days after receipt of all documents. We have found that notarization of the proof of service in this type of instance is not necessary, unless required by the court although it is recommended by us. The fees billed for third party service of process are based on our standard hourly rate, plus costs and travel expenses for cases outside of Taipei city.

Clients will soon discover that by using the services of Asiavest, they will be getting professional, quality service, from a firm that has more than twenty five years of experience in the Greater China Region. We are the primary firm in Taiwan, with fully staffed offices.

**CONTACT**: When contacting us regarding a Process of Service matter, be sure to provide us with **(1) name of city and country where the service is to be done (2) whether we will be serving a corporation or individual (3) if there has been a prior attempt of service or if you have knowledge that there may be an attempt to avoid service, and (4) if you will want your proof of service notarized (highly recommended).** By providing us with answers to these questions, it will be easier for us to provide you with a fee estimate (our fees are based on our hourly rate of USD125. per hour) and general overview of your case. It is also our standard procedure to attempt service three times before effectuating a sub-service. If you prefer more attempts at service rather than the standard three times, you must try to advise us in advance. It is always best to initially **contact us by e-mail** and we will confirm all arrangements by telephone contact **(702) 227-7266 or (702) 324-0577....Fax#(702)364-1055** or by return e-mail . At the same time, we will answer any additional questions. Your e-mail should also include the name of your firm and your return telephone number. Generally you will be contacted within twelve hours of us receiving your e-mail.

*DISCLAIMER:* The general information contained on this page is strictly for informational and discussion purposes. This information is not to be construed or viewed as any type of legal advice or formalized procedure. There are many instances which may be considered as case specific and as such it shall be the responsibility of our clients and other interested parties to independently check and verify all available information as it may apply to their own specific circumstances. When serving legal documents in Taiwan or China, we follow the specific instructions of our clients and as such we assume no liability as to the validity of the service of process. It is dependant on you the client to provide us with the appropriate documentation and procedure that you would like followed when serving your legal documents. We require the client to provide us with the documents to be served plus a completed proof of service, which our investigators will date and sign. They will also check the appropriate boxes on the proof of service, relative to the type of service. **We take no responsibility** for improperly provided proofs of service or incomplete sets of documents. It is the clients responsibility to provide the proper documents and the proper proof of service. Many times clients fail to provide a complete set of documents or fail to provide a statement of damages. In this case, certain documents must be re-served and new charges would be applicable. There would also be certain fees for re-signing of documents or re-mailing of documents. This is why it is important for the client to provide a complete and accurate set of documents. Once the client receives the completed proof of service, client has 48 hours to notify us of any incomplete information or improper documentation. This notification must be in written form. If there is no notification of incomplete proof of service or other problems within the 48 hour time period, then Asiavest assumes no liability/responsibility for incomplete proofs of service or other related problems. It should also be noted that there is no flat fee for process serving in Taiwan and China. All fees are billed at an hourly rate (USD125.), plus costs and travel expenses. An advance retainer fee is required prior to proceeding with the service of process. For more info on services and fees, go to:

**[GO TO MAIN PAGE AND CLICK ON TO: LIST OF SERVICES AND HOURLY RATES]**

**Beware** of agencies that offer a flat fee or a no service no fee arrangement. A flat fee, set fee, or no service no fee arrangement for service of process in certain areas of the Greater China Region **will invalidate the service if challenged**, in certain jurisdictions. Also, be certain that the firm you are dealing with has actual operations in Taiwan and China or are they just going to sub-contract out your work to someone else and take the many risks? Many firms will offer to provide service in this area, but generally they will sub-contract the work to another firm, opening the door to inefficiency and higher charges. **We are the only United States firm providing this service** on site.

**NON-PAYMENT:** In the event that client fails to pay their outstanding invoice in a timely manner(within 30 days of receiving our invoice/notice), we reserve the right to file a **Notice of Non-Payment in the Taipei District Court;** which will nullify the original service of process. Should this procedure be pursued, our investigator will file a notice with the court indicating that the initial service of foreign process was not completed in accordance with the agreed upon terms and conditions for the service of process. Should client fail to pay all invoices in a timely manner, this option may be exercised, which will in turn cause the service of process to be null and void. This action would be non-reversible, once filed with the court. **[WARNING ... WARNING]**

If any provision of these terms and conditions shall be deemed unlawful, void, invalid or for any reason unenforceable, then that provision shall be deemed severable from these terms and conditions and shall not affect the validity and enforceability of any remaining provisions. Absolutely no specific or implied representations, instructions and or warranties are made by our firm, our employees and or, our agents, with reference to the service of legal documents in Taiwan, China, Macao, or Hong Kong, or work performed in said areas.

## WE CAN ASSIST YOU WITH YOUR SERVICE OF PROCESS IN

### TAIWAN   CHINA   HONG KONG

**PRIMARY EMERGENCY CONTACT (702) 227-7266**

**CALIF. STATE LICENSE 22032**
**Copyright 2005 Asiavest Investigative Services. All Rights Reserved.**

[RETURN TO ASIAVEST]

[GREATER CHINA REFERENCECE PAGE]

[EXECUTION OF FOREIGN JUDGMENTS IN TAIWAN ]

[GENERIC PROOF OF SERVICE FOR TAIWAN]



China

[ Home ] [ Up ] [ Afghanistan ] [ Albania ] [ Algeria ] [ American Samoa ] [ Anguilla ] [ Antigua ]
[ Argentina ] [ Armenia ] [ Aruba ] [ Australia ] [ Austria ] [ Bahamas ] [ Bahrain ] [ Bangladesh ] [ Barbados ]
[ Belarus ] [ Belgium ] [ Belize ] [ Bermuda ] [ Bolivia ] [ Bosnia ] [ Brazil ] [ Bulgaria ] [ Cambodia ] [ Canada ]
[ Cayman Islands ] [ Channel Islands ] [ Chile ] [ China ] [ Colombia ] [ Cook Islands ] [ Costa Rica ] [ Croatia ]
[ Cuba ] [ Cyprus ] [ Czech Republic ] [ Denmark ] [ Dominica ] [ Dominican Republic ] [ Egypt ] [ El Salvador ]
[ England ] [ Ecuador ] [ Estonia ] [ Fiji ] [ Finland ] [ France ] [ Germany ] [ Ghana ] [ Gibraltar ] [ Great Britain ]
[ Grenada ] [ Greece ] [ Guam ] [ Guatemala ] [ Haiti ] [ Honduras ] [ Hong Kong ] [ Hungary ] [ Iceland ] [ India ]
[ Indonesia ] [ Iran ] [ Iraq ] [ Ireland ] [ Isle of Man ] [ Israel ] [ Italy ] [ Jamaica ] [ Japan ] [ Jordan ] [ Kazakhstan ]
[ Kenya ] [ Korea ] [ Kuwait ] [ Lebanon ] [ Liberia ] [ Liechtenstein ] [ Luxembourg ] [ Macau ] [ Malaysia ]
[ Mauritius ] [ Mexico ] [ Monaco ] [ Mongolia ] [ Morrocco ] [ Namibia ] [ Nepal ] [ Netherlands ]
[ Netherland Antilles ] [ Nevis & St Kitts ] [ New Zealand ] [ Nicaragua ] [ Nigeria ] [ Norway ] [ Pakistan ]
[ Panama ] [ Paraguay ] [ Peru ] [ Philippines ] [ Poland ] [ Portugal ] [ Puerto Rico ] [ Romania ] [ Russia ]
[ St Vincent ] [ Saudi Arabia ] [ Scotland ] [ Singapore ] [ South Africa ] [ Spain ] [ Sweden ] [ Switzerland ]
[ Taiwan ] [ Thailand ] [ Trinidad ] [ Turkey ] [ UAE ] [ Ukraine ] [ United Kingdom ] [ Uruguay ] [ Venezuela ]
[ Virgin Islands ] [ Vietnam ] [ Zimbabwe ]

# Process Service Guaranteed·
## International Service Up-date

Home
Up

### China

*Process Service Network* is one of a few firms that specializes in international service of process and offers competitive rates on foreign services.  Here is a summary of the methods available for service outside the United States and a specific proposal for the requested nation.

Our job is to cut through the bureaucracy and red tape to get the service completed with as little delay as possible.  Since we have been in business for 27 years, we have developed close working relationships with key individuals in most countries throughout the world.  The founder and President of *Process Service Network* was a Political Science major in college with a focus on international relations and is actively involved in a worldwide organization through which he has developed business and personal relationships in over 80 nations worldwide.

FORMAL SERVICE:

Many countries are signatories to *The Hague Service Convention* (treaty) that governs service of process to be effected between participating nations. Service in China may only be made by this method. Service is made by formal service through the Central Authority which itself arranges for service by methods prescribed in that country.  Documents to be served in accordance with this method must be translated into the official language of the country where the documents will be served.  We prepare the USM-94 form, letters of transmittal, and all other required documents.  The time frame can range from 3 to 5 months, typically 4 months.

Advantage:     Enforceable judgment; only legal method.

SERVICE BY PRIVATE PROCESS SERVER IS NOT AVAILABLE IN CHINA

TRANSLATIONS:

CHINA requires the documents to be translated into the official language of the nation where they are to be served, Mandarin Chinese.

COSTS:

Service of process:    Formal    =            $825.00

Plus US$93.00, payable with "International Money Order" payable to. The Supreme People's Court of the People's Republic of China  Note: Acquiring this form of payment is often difficult since most banks do not handle International Money Orders   We can obtain the check from one of our bank sources for an additional fee of $100.00 (includes bank fees)

Informal =            N/A

Letters Rogatory =        N/A

All fees are per defendant/address

Translation:        $0.38 per word (proper nouns not translated)

ASSISTANCE:        We will provide any court required declarations necessary for extension of time for service, in the event that the deadline for service cannot be met, at no additional charge.

DISCLAIMER:

The information contained herein is provided for general information only and may not be accurate at the time of service in a particular case or country.  Questions involving specific services should be directed to our office.  Care should be exercised in choosing the method of service (formal/informal) if eventual enforcement of a U.S. judgment is anticipated in the country where the documents are to be served.  No legal advice is intended in the statements contained herein.  Assignments for international service of process are accepted on the basis that the assigning law firm has researched all applicable laws  Process Service Network and its agents assume no liability for its actions in the course of any phase of the service of process assignment.

**Process Service Network**™ is a registered trademark. Copyright ©1998- 2005.  All rights reserved.

Phone: (800)4-1-PROCESS  or  (800)417-7623  or  (818)772-4795

Fax:    (818)772-4798

Mailing address:    19524-10 Nordhoff Street, Northridge, CA 91324

E-mail:  processnet@sbcglobal.net



*Specializing in International Service and "hard-to-serve" cases*



* Guaranteed service means we will serve the documents at the address provided, if service is legally possible. Dated documents may require a re-set of the court date if unable to serve in time.  Additional charge will apply for additional addresses and attempts on dated documents after re-set.  Guarantee does not apply to investigations, out-of-area process service, small claims cases, documents with specific court dates, or international service of process due to circumstances that may occur beyond our control or in certain nations and we cannot be responsible for such circumstances. **No refunds will be made after institution of any assignment, for any reason.** All fees are due and payable upon demand  Our fees cover all known governmental fees in foreign nations and our fee to handle the service; in rare cases, extra charges may apply to cover governmental agency fees  There is an Embassy fee of $735.00 per defendant on all Letters Rogatory assignments

Note:  We've been doing it for 27 years, so we must be doing it right.

### *Celebrating 27 years of service to the legal profession*



pro                                                   cess servers Los            Angeles  process servers Quebec  process servers Montreal  process servers
**Last modified: Monday February 14, 2005.**ess servers Sacramento  process servers Arkansas  process servers Alaska  process servers Colorado  process servers
Connecticut  process servers Calgary  process servers District of Columbia  process servers Delaware  process servers Florida  process servers Georgia  process servers Hawaii
process servers Idaho  process servers Illinois  process servers Mississippi  process servers Montana  process servers Nebraska  process servers New Hampshire  process servers
New Jersey  process servers New Mexico  process servers Mexico  process servers North Carolina  process servers North Dakota  process servers Ohio  process servers Oklahoma
process servers Oregon  process servers Pennsylvania  process servers Indiana  process servers Iowa  process servers Kansas  process servers Kentucky  process servers
Louisiana  process servers Maine  process servers Maryland  process servers Massachusetts  process servers Missouri  process servers Michigan  process servers Minnesota
process servers  Rhode Island  process servers South Carolina  process servers South Dakota  process servers Tennessee  process servers Texas  process servers Utah  process
servers Utah  process servers Vermont  process servers Virginia  process servers Washington  process servers Washington  DC  process servers West Virginia  process servers
Wisconsin  process servers Wyoming  process servers Chatsworth

# Exhibit D

FILED IN CHAMBERS
4-19-05
Luther D. Thomas, Clerk

Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FURUKAWA ELECTRIC NORTH
AMERICA, INC.,

        Plaintiff,               CIVIL ACTION

      v.                    NO. 1:02-CV-2149

STERLITE OPTICAL TECHNOLOGIES,
LIMITED; STERLITE OPTICAL
TECHNOLOGIES, INC.; ANAND
AGARWAL; and BRIAN CHOMNIAK,

        Defendants.

O R D E R

    This matter is before the court on the following motions: (1)
the plaintiff's motion to compel discovery responses [Doc. No. 70],
(2) the plaintiff's motion for an extension of time to respond to
discovery [Doc. No. 68], (3) the plaintiff's motion for a
protective order [Doc. No. 69], and (4) the plaintiff's motion to
extend the discovery deadline and for a scheduling conference [Doc.
No. 71].

Procedural History

    The plaintiff designs, manufactures and supplies optical
fiber, optical fiber cable, optical connectivity products, and
speciality photonics products for high speed optical networks.  On
August 8, 2002, Fitel USA Corp. ("Fitel"), filed the instant patent
infringement action against Fibercore, Inc. ("Fibercore") to defend

1

its interest in three patents related to optical fibers (the "Furukawa Patents").

On November 14, 2002, Fitel amended its complaint to add defendant Sterlite Optical Technologies, Inc. ("Sterlite US") as a party defendant. Sterlite US imported optical fiber made by Sterlite Optical Technologies, Limited ("Sterlite India") into the United States and then packaged the optical fiber into optical fiber cable for sale within the United States. Approximately one month after Sterlite US was added as a party defendant, the court dismissed defendant Fibercore for lack of personal jurisdiction.

On December 13, 2003, after discovery was almost complete, Fitel filed a motion for leave to file a Third Amended Complaint adding a claim for trade secret misappropriation. The motion also sought leave to add Sterlite India, Mr. Anand Agarwal, and Mr. Brian Chomniak as party defendants. As grounds for this motion, Fitel claimed that it sought to pierce the corporate veil of Sterlite US and hold Sterlite India responsible for the damages caused by Sterlite US's infringement of the Furukawa Patents and misappropriation of Fitel's trade secrets, and for inducing Sterlite US to infringe the Furukawa Patents. Specifically, Fitel alleged that Sterlite India controlled Sterlite US and is the company that developed and manufactured optical fiber and optical fiber cables for Sterlite US. Fitel also claimed that Mr. Agarwal, who was an officer of both Sterlite India and Sterlite US, and Mr.

2

Chomniak, who was an officer of Sterlite US, aided and abetted in the misappropriation of Fitel's trade secrets.

The court, with the consent of Sterlite US, granted Fitel's motion for leave to amend on January 27, 2004, and ordered Fitel to file its Third Amended Complaint. Instead of filing its Third Amended Complaint, on February 26, 2004, the plaintiff filed a Fourth Amended Complaint, which was substantially similar to the Third Amended Complaint except that it noted that Fitel had changed its name to Furukawa Electric North America, Inc. (the "plaintiff"). The defendants consented to the filing of the Fourth Amended Complaint.

A few months after the plaintiff filed its Fourth Amended Complaint, the court held a status conference addressing the timing of any additional discovery necessitated by the plaintiff's Fourth Amended Complaint. On May 19, 2004, the court endorsed the parties' Supplemental Joint Preliminary Report and Discovery Schedule ("Discovery Schedule") extending fact discovery until January 15, 2005. Because the parties agreed to attend mediation, the Discovery Schedule ordered the parties to attend a mediation conference no later than July 18, 2004. Prior to attending mediation, however, the defendants were excused from responding to any outstanding discovery requests.

Despite the court's endorsement of the Discovery Schedule, the parties did not attend mediation in July. Instead, the plaintiff

3

moved the court to extend the deadline for the parties to participate in a mediation conference until September 24, 2004, on the ground that defense counsel was going to seek leave to withdraw.  The motion for leave to withdraw was filed with the court on July 30, 2004, and was granted on September 14, 2004.  The court also granted the plaintiff's motion for leave to extend the date of mediation until September 24, 2004.

Despite the court's order allowing the parties until September 24, 2004, to complete mediation, the parties did not do so, in part, because the defendants' new counsel did not enter an appearance until September 29, 2004. After defense counsel entered their appearance, the parties did attempt to set a date for mediation, but were unable to agree upon an acceptable date for mediation.

Pursuant to the Discovery Schedule, fact discovery closed on January 15, 2005.  Because the Discovery Schedule excused the defendants from responding to outstanding discovery requests until after mediation and the parties could not agree on an acceptable mediation date, little to no discovery was completed during the time period from the court's endorsement of the Discovery Schedule to the close of fact discovery.  This scheduling crunch precipitated the instant motions. A status conference and hearing ("Status Conference") regarding these motions was held on Monday, April 18, 2005.

4

## Legal Analysis

### 1.   The Fourth Amended Complaint

As noted above, on February 26, 2004, without first seeking leave of the court, the plaintiff filed its Fourth Amended Complaint [Doc. No. 53].   The Fourth Amended Complaint made minor changes to the Third Amended Complaint and noted that the plaintiff had changed its name from Fitel USA Corp. to Furukawa Electric North America, Inc.

At the Status Conference, the defendants indicated that they consented to the filing of the Fourth Amended Complaint. As such, the court grants the plaintiff leave to file the Fourth Amended Complaint and accepts the Fourth Amended Complaint, which was filed on February 26, 2004 [Doc. No. 53].   The case will proceed under the Fourth Amended Complaint.

### 2.   The plaintiff's motion to compel discovery responses, the plaintiff's motion for an extension of time to respond to discovery, and the plaintiff's motion for a protective order

At the Status Conference, the plaintiff indicated that these motions are moot.   See Pl.'s Reply in Supp. of its Discovery Mots. at 3 n.2 [Doc. No. 91].   As such, the plaintiff's motion to compel discovery responses [Doc. No. 70], the plaintiff's motion for an extension of time to respond to discovery [Doc. No. 68], and the plaintiff's motion for a protective order [Doc. No. 69] are DISMISSED as moot.

5

3.   The plaintiff's motion to extend the discovery deadline
     and for a scheduling conference

Because attending a mediation conference was a condition
precedent to the defendants responding to discovery, and because
the withdrawal of defense counsel caused a delay in setting a date
for mediation, the plaintiff filed a motion asking the court to
extend fact discovery until June 1, 2005.  The defendants objected
to this extension of time and requested a much more limited
extension of the discovery period – until March 31, 2005.   The
defendants also asked that fact discovery during that time be
severely circumscribed such that the parties could only respond to
outstanding discovery requests and could not serve new discovery
requests.

Because the Status Conference could not be arranged until
April 18, 2005, several weeks after the new date proposed by the
defendants for the close of discovery, the court ordered the
parties to submit a proposed amended Joint Preliminary Report and
Discovery Plan prior to the Status Conference.  Accordingly, the
parties submitted their Proposed Amended Joint Preliminary Report
and Discovery Plan [Doc. No. 96] on Friday, April 15, 2005.   The
deadlines proposed in the Proposed Amended Joint Preliminary Report
and Discovery Plan differ from those proposed by either party in
their original motion and objections. As a result, the plaintiff's
motion to extend the discovery deadline is DISMISSED as moot to the

6

extent it requests an extension of the discovery deadline until
June 1, 2005.

The court has reviewed the Proposed Amended Joint Preliminary
Report and Discovery Plan [Doc. No. 96] and ADOPTS it subject to
the following changes:

a.    At the Status Conference, the defendants expressly
      abandoned their claim that Nextrom (USA) should be joined
      as a party defendant. [See Doc. No. 96 at 7].

b.    The defendants will produce in Atlanta all relevant, non-
      privileged documents requested by the plaintiff that were
      generated in whole or in part by the following former
      employees of Sterlite US: (1) Paul Bendig; (2) Jim
      Burnett; (3) Rusty Yother; (4) David Ernest; (5) Michael
      Johnson; and (6) Brian Chomniak. The defendants shall
      produce all remaining relevant, non-privileged documents
      requested by the plaintiff and generated by either
      Sterlite US or Sterlite India in India.

c.    Depositions of the defendants' employees who are
      currently working in India shall take place in India.

d.    Pursuant to the Patent Local Rules, this case will follow
      the schedule attached to this order as Exhibit A.

7

<u>Conclusion</u>

For the foregoing reasons, the court hereby:

    (1)    GRANTS the plaintiff leave to file its Fourth Amended Complaint and accepts the Fourth Amended Complaint, which was filed on February 26, 2004 [Doc. No. 53];

    (2)    DISMISSES as moot the plaintiff's motion to compel discovery responses [Doc. No. 70];

    (2)    DISMISSES as moot the plaintiff's motion for an extension of time to respond to discovery [Doc. No. 68];

    (3)    DISMISSES as moot the plaintiff's motion for a protective order [Doc. No. 69];

    (4)    GRANTS IN PART and DISMISSES IN PART as moot the plaintiff's motion to extend the discovery deadlines and for a scheduling conference [Doc. No. 71]; the motion is granted to the extent that the plaintiff requested a scheduling conference, which was held on April 18, 2005; the motion is dismissed as moot to the extent that the plaintiff moved to extend the discovery deadline until June 1, 2005; discovery will be governed by the schedule attached as Exhibit A to this order; and

8

(5)    ADOPTS the proposed amended joint preliminary
       report and discovery plan [Doc. No. 96] subject to
       the changes previously set forth in this order.

SO ORDERED, this 19ᵗʰ day of April, 2005.

CHARLES A. PANNELL, JR.
United States District Judge

9

Exhibit A

| Event | Date |
|---|---|
| Pursuant to LPR 4.1, the plaintiff s serve its Disclosure of Infringement Contentions upon the defendants. | May 9, 2005 |
| The defendants shall file with the court any objections to the sufficiency of the plaintiff's Disclosure of Infringement Contentions. A courtesy copy of the objections must be hand-delivered to the court. | May 13, 2005 |
| The plaintiff shall file its response to the defendant's objections to the sufficiency of the plaintiff's Disclosure of Infringement Contentions. A courtesy copy of the response must be hand-delivered to the court. | May 18, 2005 |
| Pursuant to LPR 4.2-4.3, the defendant shall serve their Response to the plaintiff's Infringement Contentions and their Disclosure of Invalidity Contentions. | June 1, 2005 |
| The plaintiff shall file with the court any objections to the sufficiency of the defendant's Invalidity Contentions. A courtesy copy of the objections must be hand-delivered to the court. | June 7, 2005 |
| The defendants shall file their response to the plaintiff's objections to the sufficiency of their Disclosure of Invalidity Contentions. A courtesy copy of the response must be hand-delivered to the court. | June 13, 2005 |
| Pursuant to LPR 6.1, the parties shall simultaneously exchange a list of claim terms, phrases or clauses which the party contends should be construed by the court and identify any claim element, which the party contends should be governed by 35 U.S.C. § 112(6). | June 14, 2005 |

10

| | |
|---|---|
| Pursuant to LPR 6.2, the parties shall simultaneously exchange a preliminary proposed construction of each claim term, phrase or clause, which any party has identified for claim construction. | July 1, 2005 |
| Pursuant to LPR 6.3, the parties shall file a Joint Claim Construction Statement. | July 22, 2005 |
| Pursuant to LPR 6.4, discovery relating to claim construction shall close. | August 1, 2005 |
| Pursuant to LPR 6.5(a), each party shall file and serve its opening brief and evidence supporting its claim construction. | August 12, 2005 |
| Pursuant to LPR 6.5(b), each party shall file and serve its responsive brief and supporting evidence regarding claim construction. | September 1, 2004 |
| Markman hearing | To be determined by the court |
| The fact discovery period shall close.  Prior to this date, the parties are free to pursue all fact discovery available under the Federal Rules of Civil Procedure, except that discovery regarding claim construction will close on August 1, 2005. | The date the court issues its Markman Order + 45 days |
| Pursuant to LPR 7.1 (b), for issues other than claim construction, each party shall make its expert witness disclosures on the issues for which it bears the burden of proof. | Close of fact discovery + 30 days |
| Pursuant to LPR 7.1(c), for the issues other than claim construction, each party shall make its initial expert witness disclosures on the issues for which the opposing party bears the burden of proof. | Close of fact discovery ÷ 60 days |
| Pursuant to LPR 7.1(d), each party shall make its rebuttal expert witness disclosures. | Close of fact discovery + 70 days |

11

| | |
|---|---|
| Pursuant to LPR 7.2, the deposition period for expert witnesses shall commence. | Close of fact discovery + 77 days. |
| Pursuant to LPR 7.2, the depositions period for expert witnesses shall close. | Close of fact discovery + 107 days. |
| Deadline for dispositive motions | Close of fact discovery + 137 days |
| Pursuant to LPR 5.2, discovery on the substance of the opinions of counsel shall commence. | Earlier of: (1) five days after a ruling on summary judgment indicating a triable issue of fact to which willfulness would be relevant; or (2) 30 days prior to the close of fact discovery |

12

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FURUKAWA ELECTRIC NORTH AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1: 02 – CV – 2149  CAP |
| STERLITE OPTICAL TECHNOLOGIES, INC. STERLITE TECHNOLOGIES, LIMITED; ANAND AGARWAL; and BRIAN CHOMNIAK, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT CLAIM CONSTRUCTION STATEMENT

Plaintiff, Furukawa Electric North America, Inc. ("Plaintiff") and

Defendants Sterlite Optical Technologies, Inc., Sterlite Technologies, Limited,

Anand Agarwal and Brian Chomniak ("Defendants"), hereby provide the Court

with their Joint Claim Construction Statement.  The parties each propose the

claim terms be interpreted by the Court as set forth in the attached Exhibit A,

including the patent claim terms, proposed construction by the parties, and the

parties' respective support therefore.  The terms on which the parties disagree as

to construction thereof are set out for the Court in bold and underlined

highlighting.  The parties reserve their right to supplement identification of

extrinsic evidence if new evidence becomes available hereafter.

Plaintiff anticipates that the time necessary for a Claim Construction Hearing will be approximately 3 to 4 days. Defendants anticipate that a Claim Construction hearing will require approximately one day.

Presently, Plaintiff anticipates that it may call the following witnesses at the Claim Construction Hearing for purposes of providing testimony as to the interpretation by persons of ordinary skill in the art as to the terms of the claims of the patents in suit as set forth by Plaintiff in the attached Exhibit A

Kenneth L. Walker

Michael Morra.

Presently, Defendants do not anticipate calling any witnesses at the Claim Construction Hearing. However, Defendants do anticipate relying upon deposition testimony regarding the meaning of the claims as identified in Exhibit A. Defendants also object to Plaintiff's identification of Kenneth Walker and Michael Morra as potential witnesses at the Claim Construction hearing. Defendants believe that Plaintiff has never identified Mr. Morra as having any knowledge regarding any matter related to the litigation.

The parties acknowledge that the submission of this Statement jointly, as required by the Court, shall not be construed as either party agreeing or disagreeing to any argument, allegation or position taken by the opposing party, unless expressly set forth herein.

Respectfully submitted this 29th day of July 2005.

| | |
|---|---|
| s/Bruce J. Rose | s/Mitchell G. Weatherly |
| H. Stephen Harris | Mitchell G. Weatherly, Esq. |
| (Georgia Bar No. 329941) | (Georgia Bar No. 742889) |
| Keith E. Broyles | David S. Kerven, Esq. |
| (Georgia Bar No. 090152) | (Georgia Bar No. 416459) |
| Bruce J. Rose | WEATHERLY KERVEN LLC |

(admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
404-881-7000 (voice)
404-881-7777 (fax)

**OF COUNSEL:**
Michael D. McCoy
North Carolina Bar No. 11192
ALSTON & BIRD LLP
Bank Of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, N.C. 28280-4000
704-444-1000 (voice)
704-444-1111 (fax)

**Attorneys for Plaintiff**
**Furukawa Electric North America, Inc.**

115 Perimeter Center Place, NE
Suite 1082
Atlanta, Georgia  30346–1249
770-395-5920 (voice)
770-395-5921 (fax)

**Attorneys for Defendants**
**Sterlite Optical Technologies, Limited**
**Sterlite Optical Technologies, Inc.**
**Anand Agarwal**
**Brian Chomniak**

Exhibit A

JOINT PROPOSED CLAIM INTERPRETATIONS

I.    U.S. Patent No. 4,909,816

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| **Claim 1** | | |
| 1. A method of making an optical fiber **preform** suitable for drawing into an optical fiber including the steps of: | A glass structure, including a tube or rod made from the claimed process, not necessarily including the hollow glass tube, from which an optical fiber may be drawn. Specification of the '816 patent at: Col. 3, L. 36–50; Col. 7, L. 40–54; Col. 9, L. 4–8, 40–46; Col. 10, L. 22–26. File History of the '816 patent at: Attachment to MacChesney-O'Connor, *Preparation of Low Loss Optical Fibers Using Simultaneous Vapor Phase Deposition and Fusion*, p. 6–42, Application Ser. No. 5/444,705; Amendment, May 14, 1979, attached Memorandum For File, March 26, 1973, p. 4, Application Ser. No. 5/828,617. | The glass rod or tube that can be loaded into a draw tower and drawn into optical fiber.<br>**Intrinsic Evidence**<br>'816 patent: 3:34–42; 7:32–54; 8:23–32; 9:4–6; 9:40–46; and 10:22–24.<br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 85–94. Affidavit of Frank DiMarcello, pp. 1–4 (FIT01008620–23). |
| providing a hollow glass tube of a first refractive index and __having a__ | The hollow glass tube includes a known length (not necessarily its | The "hollow glass tube" has a length that is (1) determined before |

- 1 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| predetermined length with a bore formed therethrough; | total length) that is at least as long as the preform intended to be made. Specification of the '816 patent at: Col. 4, L. 32-34; Figs. 1 and 2; Col. 8, L. 23-32.<br><br>Extrinsic Evidence to counter Defendants: MacChesney Trans., pp. 45-49, 114-15, 117-19; Amendment, May 14, 1979, attached Memorandum For File, March 26, 1973, p. 3, Application Ser. No. 5/828,617. | the claimed process begins and (2) remains unchanged throughout the practice of the claimed process.<br>**Intrinsic Evidence**<br>'816 patent: FIG. 1; 4:1-10, 6:63-7:4; 8:23-32; 8:38-39; 8:57-58; 9:13-14; and 9:53-57.<br>'816 File History: Office Action mailed March 8, 1984 (FIT01009195-97); Request for Reconsideration, pp. 1-2 (FIT01009200-01).<br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 62-63, 85-94. |
| introducing into said bore, in unreacted dry vapor form, | At least two compounds or molecules which are in a vapor or gaseous state and which have not yet reacted with each other and which do not include substantial amounts of hydrogen or other water-forming compounds.<br>Specification of the '816 patent at: Col. 2, L. 55-58; Col. 4, L. 8-19; Col. 5, L. 43-48, 56-61; Col. 6, L. 7-17, 24-29, 54-61; Col. 7, L. 5-6, 25-31; Col. 8, | "Dry vapor" refers to a gaseous material devoid of hydrogen.<br>"Unreacted" means that the reaction between "dry vapor" material and oxygen has not occurred when the "dry vapor" material is introduced into the bored formed through the tube.<br>**Intrinsic Evidence**<br>'816 patent: 2:32-41; 2:55-58; 3:9-14; 6:54-61. |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | L. 39–55; Col. 9, L. 49–Col. 10, L. 29. File History of the '816 patent at: Response to Office Action, September 5, 1975, p. 4, Application Ser. No. 5/444,705; Response to Office Action, November 12, 1976, p. 4–5, Application Ser. No. 5/444,705; Attachment to MacChensney-O'Connor, *Preparation of Low Loss Optical Fibers Using Simultaneous Vapor Phase Deposition and Fusion*, p. 6–44, Application Ser. No. 5/444,705; Office Action, February 18, 1977, p. 3, Application Ser. No. 5/444,705; Remarks to Preliminary Amendment, August 26, 1977, p. 6, Application Ser. No. 5/828,617. Extrinsic Evidence to counter Defendants: MacChesney Trans., pp. 120–21, 128, 132. | '816 File History: Amendment filed February 22, 1974 in Application No. 444,705 (parent application for the '816 patent), pp. 4–5 (FIT01009685–86). **Extrinsic Evidence** MacChesney Depo., pp. 67–71, 119–128. |
| material that forms a glass layer, coating said bore by <u>thermally depositing said material thereon</u> | Ordinary meaning Thermally Depositing: Deposition or accumulation on a surface as a result of elevated temperature. | Ordinary meaning Thermally Depositing: Depositing material on the inner walls of the tube via thermophoretic processes. |

- 3 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | Specification of the '816 patent at: Col. 2, L. 55–61; Col. 4, L. 50–54; Col. 5, L. 3–7; Col. 7, L. 64–68. File History of the '816 patent at: Response to Office Action, September 5, 1975, p. 8, Application Ser. No. 5/444,705; Affidavit of Rand, September 8, 1975, p. 4, Application Ser. No. 5/444,705; Attachment to MacChesney-O'Connor, *Preparation of Low Loss Optical Fibers Using Simultaneous Vapor Phase Deposition and Fusion*, p. 6–44, Application Ser. No. 5/444,705; Application Ser. No. 6/147,934, p. 18, Lines 30-34; Application Ser. No. 6/382,401, p. 18, Lines 30-34; Application Ser. No. 6/517,430, p. 18, Lines 30-34.<br><br>Said Material: The reactant material introduced into the bore, whether in unreacted form or in its reacted form after heating in the tube. Specification of the '816 patent at: | **Intrinsic Evidence**<br>'816 patent: 4:40–54; 4:65–5:8; 7:16–24; 7:57–68.<br><br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 108–10; and U.S. Patent No. 4,263,032.<br><br>Said Material: The same "material" referenced in the preceding phrase "in unreacted, dry vapor form, material".<br><br>**Intrinsic Evidence**<br>'816 patent: 5:57–642; 7:57–68.<br><br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 67–71. |

- 4 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | Col. 2, L. 56-58, 62; Col. 4, L. 7-9, 37-39, 50-54; Col. 5, L. 3-7, 57-68; Col. 6, L. 1-61; Col. 7, L. 5-40; Col. 8, L. 59-67; Col. 9, L. 6-10, 15-30, 40-46, 57-60; Col. 10, L. 1-29. Extrinsic Evidence to counter Defendants: MacChesney Trans., p. 24. | |
| to form a glass layer of higher refractive index than the refractive index of said tube; | Ordinary meaning | Ordinary meaning |
| rotating said glass tube about its longitudinal axis by a rotating device, | Ordinary meaning | Ordinary meaning |
| while heating said coated tube to collapse said tube into a solid preform | Ordinary meaning that the preform is not hollow. Specification of the '816 patent: Col. 3, L. 45-50; Col. 7, L. 40-43; Col. 10, L. 22-24 File History of the '816 patent: Amendment, May 14, 1979, attached Memorandum For File, March 26, 1973, p. 6, Application Ser. No. 5/828,617. | "Solid" requires that the preform have no voids inside it. |
| having substantially the same | The preform has a length that is | The "length" of the preform is the |

- 5 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| length as said predetermined length | equal to most (more than half) of the known length of the hollow glass tube.<br><br>Specification of the '816 patent at: Col. 4, L. 32-34; Figs. 1 and 2; Col. 8, L. 23-32.<br><br>File History of the '816 patent at: Amendment, May 14, 1979, attached Memorandum For File, March 26, 1973, p. 3, Application Ser. No. 5/828,617. | distance from one end of the preform to the other. This "length" must be "substantially the same" as the "predetermined length" mentioned earlier in each of the independent claims.<br><br>**Intrinsic Evidence**<br>'816 patent: FIG. 1; 4:1–10, 6:63–7:4; 8:23–32; 8:38–39; 8:57–58; 9:13–14; and 9:53–57.<br><br>'816 File History: Office Action mailed March 8, 1984 (FIT01009195–97); Request for Reconsideration, pp. 1–2 (FIT01009200–01).<br><br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 47, 62–63, 85–94. |
| whereby the glass coating layer becomes a core of said higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 2** | | |
| 2. The method of making an optical fiber preform as set forth in claim 1, | Preamble | Preamble |
| wherein said tube is made of a silica | Ordinary meaning | Ordinary meaning |

- 6 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| glass and wherein **said material** includes germania and silica in order to produce an optical fiber preform having a core of mixed germania-silica composition. | See Claim 1 | See Claim 1 |
| Claim 3 | | |
| 3. The method of claim 1 wherein the coating, rotating and heating steps occur in the order recited. | Ordinary meaning | Ordinary meaning |
| Claim 4 | | |
| 4. A process for fabrication of a glass optical fiber preform having a core section and a cladding comprising the steps of: | Preamble | Preamble |
| introducing a moving stream of a **vapor mixture including at least one compound glass forming precursor together with an oxidizing medium** | Introducing a moving stream of a mixture of at least two compounds or molecules which are in a dry vapor or gaseous state, which mixture includes at least one reactant containing silicon, and also includes at least one reactant containing an oxidizing medium. Specification of the '816 patent at: Col. 2, L. 56-58, 62-68; Col. 4, L. 55- | (1) The phrase "a vapor mixture" refers to a homogeneous mixture of vapor or gaseous constituents; (2) the phrase "including at least one compound glass forming precursor" refers to a type of one of the constituents of the vapor mixture; (3) the "glass forming precursor" is also a material such as chlorides or hydrides of silicon that when |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | 63;: Col. 7, L. 25–40; Col. 8, L. 39–46, 59–67; Col. 9, L. 6–10, 15–30, 40–46, 57–60; Col. 10, L. 1–29. | combined appropriately with oxygen react to form glass. Examples of such "glass forming precursors" include silicon tetrachloride, germanium tetrachloride, silane, and diborane. The phrase "together with an oxidizing medium" refers to another constituent in the "vapor mixture" that includes an oxidizing reactant that is capable of reacting with the "glass forming precursor" to form glass. **Intrinsic Evidence** '816 patent: 2:32–41; 2:55–58; 3:9–14; 6:54–61. **Extrinsic Evidence** MacChesney Depo., pp. 70–71, 119–128. |
| into a tube of **a predetermined length.** | See Claim 1 | See Claim 1 |
| heating the tube and contents by a moving hot zone produced by a correspondingly moving heat source external to the tube | Ordinary meaning | Ordinary meaning |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| so as to react the said mixture and produce a glassy layer on the inner surface of the tube, | Ordinary meaning | Ordinary meaning |
| rotating said glass tube about its longitudinal axis by a rotating device, | Ordinary meaning | Ordinary meaning |
| while heating said coated tube to collapse said tube into a solid preform | Ordinary meaning | Ordinary meaning |
| having substantially the same length as said predetermined length | See Claim 1 | See Claim 1 |
| whereby the glass coating layer becomes a core having a higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| Claim 5 | | |
| 5. The process of claim 4 wherein said vapor mixture includes oxygen and chlorides of silicon and germanium. | Ordinary meaning | Ordinary meaning |
| Claim 6 | | |
| 6. The process of claim 4 wherein the first mentioned heating, the rotating and the second mentioned | Ordinary meaning | Ordinary meaning |

- 9 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| heating steps occur in the order recited. | | |
| **Claim 7** | | |
| 7. A method of making an optical fiber preform having a glass core and a glass cladding comprising the steps of: | Preamble | Preamble |
| introducing a stream of vapors into the interior of a glass tube having a first refractive index and a predetermined length, | See Claim 1 | See Claim 1 |
| said vapor being <u>chemically reactive in the process of heating to form glass substantially similar to that of said glass core,</u> | A vapor or gaseous substance containing at least two reactants capable of undergoing a chemical reaction after elevating the temperature of the substance which results in formation of a glass having a refractive index that is significantly similar to the refractive index of the glass core. Specification of the '816 patent at: Col. 2, L. 56-58; Col. 6, L. 3-42; col. 7, L. 5-9, 25-40; Col. 8, L. 39-46, 59-67; Col. 9, L. 6-10, 15-30, 40-46, 57-60; Col. 10, L. 1-29. | The entire phrase generally modifies the noun "stream" in the phrase "stream of vapors" which is recited previously in the claim. The phrase "chemically reactive in the process of heating" means that the constituents of the "stream of vapors" react chemically with each other when heated. The phrase "to form glass" refers generally to at least one of the products of the chemical reaction that occurs when the "stream of vapors" is heated. The phrase "substantially similar to |

- 10 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | | that of said glass core" modifies the word "glass" that immediately precedes this phrase. The specific phrase "said glass core" refers to the "glass core' recited in the preamble as part of the "optical fiber preform" that is made using the claimed process.<br>**Intrinsic Evidence**<br>'816 patent: 4:40–54; 4:65–5:8; 7:16–24; 7:57–68.<br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 70–71, 119–128. |
| establishing a <u>localized hot zone</u> in the interior of said glass tube to react vapor within said hot zone, | A region of the interior of the glass tube that does not extend the entire length of the glass tube having an elevated temperature which is caused by the heating means.<br>Specification of the '816 patent at: Col. 2, L. 59–61; Col. 3, L. 31–33; Col. 4, L. 2–6, 33–36, 41–42; Col. 5, L. 15–35; Col. 8, L. 8–11.<br>File History of the '816 patent at: Affidavit of MacChesney and | An area in the interior of the glass tube and generally depicted as "hot zone 3" on FIG. 1 of the '816 patent. The "localized hot zone" does not extend over the entire length of the glass tube but rather extends over a length of 2 cm to 4 cm of the tube. Instead, it is limited to the area in the interior of the glass tube immediately adjacent the portion of the glass tube that is heated to at |

- 11 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| moving said hot zone longitudinally along substantially the same length of said glass tube | O'Connor, April 23, 1976, p. 7, Application Ser. No. 777,705; Application Ser. No. 5/828,617, p. 20, Lines 10–17; Amendment, May 14, 1979, p. 1, Line 10 – p. 2, Line 20, Application Ser. No. 5/828,617; Amendment, May 14, 1979, attached Memorandum For File, March 26, 1973, p. 3, Application Ser. No. 5/828,617; Application Ser. No. 6/147,934, p. 18, Lines 15–17. | least 1200° C but no more than 1600° C.<br><br>**Intrinsic Evidence**<br>'816 patent: FIGS. 1 and 3; 3:25–27; 4:1–10; 4:40–54; 6:62–7:24; 7:57–68; and 8:8–11.<br><br>**Extrinsic Evidence**<br>MacChesney Depo., pp. 39–46, 55–58, and 70–71. |
| to coat a layer of glass substantially similar to said glass core on the inside wall of said glass tube, | Ordinary meaning | Ordinary meaning |
| rotating said glass tube about its longitudinal axis by a rotating device, | Ordinary meaning | Ordinary meaning |
| while heating said coated tube to collapse said tube into a solid preform having substantially the same length as said predetermined length | Ordinary meaning | Ordinary meaning |
| | See Claim 1 | See Claim 1 |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| whereby the glass coating layer becomes a core having a higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 8** | | |
| 8. The method of claim 7 wherein the moving, rotating and heating steps occur in the order recited. | Ordinary meaning | Ordinary meaning |
| **Claim 9** | | |
| 9. A method of making an optical fiber **preform** suitable for drawing into an optical fiber including the steps of: | See Claim 1 | See Claim 1 |
| providing a hollow glass tube of a first refractive index and **having a predetermined length** with a bore formed therethrough; | See Claim 1 | See Claim 1 |
| introducing into said bore, in **unreacted dry vapor form**, material that forms a glass layer, | See Claim 1 | See Claim 1 |
| coating said bore by **thermally depositing** | See Claim 1 | See Claim 1 |
| **said material** thereon to form a glass layer of higher refractive index than the refractive index of said | See Claim 1 | See Claim 1 |

- 13 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| tube; | | |
| rotating said coated glass tube about its longitudinal axis by a rotating device; | Ordinary meaning | Ordinary meaning |
| and heating said rotating coated tube to collapse said tube into a solid preform | Ordinary meaning | Ordinary meaning |
| having **substantially the same length as said predetermined length** | See Claim 1 | See Claim 1 |
| whereby the glass coating layer becomes a core of said higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 10** | | |
| 10. The method of claim 9 wherein said heating step is accomplished by passing a heat source along the length of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 11** | | |
| 11. The method of claim 10 wherein said core includes germania and silica. | Ordinary meaning | Ordinary meaning |
| **Claim 12** | | |
| 12. A process for fabrication of a | See Claim 1 | See Claim 1 |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| glass optical fiber preform having a core section and a cladding comprising the steps of: | | |
| introducing a moving stream of a vapor mixture including at least one compound glass forming precursor together with an oxidizing medium | See Claim 4 | See Claim 4 |
| into a tube of a predetermined length | See Claim 1 | See Claim 1 |
| heating the tube and contents by a moving hot zone produced by a correspondingly moving heat source external to the tube | Ordinary meaning | Ordinary meaning |
| so as to react the said mixture and produce a glassy layer on the inner surface of the tube, | Ordinary meaning | Ordinary meaning |
| rotating said coated glass tube about its longitudinal axis by a rotating device; | Ordinary meaning | Ordinary meaning |
| and heating said rotating coated tube to collapse said tube into a solid preform having substantially the same length as said predetermined length | See Claim 1 | See Claim 1 |

- 15 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| whereby the glass coating layer becomes a core having a higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 13** | | |
| 13. The process of claim 12 wherein the second-mentioned heating step is accomplished by passing a heat source along the length of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 14** | | |
| 14. The process of claim 12 wherein said core includes germania and silica. | Ordinary meaning | Ordinary meaning |
| **Claim 15** | | |
| 15. A method of making an optical fiber **preform** having a glass core and a glass cladding comprising the steps of: | See Claim 1 | See Claim 1 |
| introducing a stream of vapors into the interior of a glass tube having a first refractive index and a **predetermined length,** | See Claim 1 | See Claim 1 |
| said vapor being **chemically reactive in the process of heating to form glass substantially similar to** | See Claim 7 | See Claim 7 |

- 16 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| that of said glass core, | | |
| establishing a **localized hot zone** in the interior of said glass tube to react vapor within said hot zone, | See Claim 7 | See Claim 7 |
| moving said hot zone longitudinally along substantially the same length of said glass tube | Ordinary meaning | Ordinary meaning |
| to coat a layer of glass substantially similar to said glass core on the inside wall of said glass tube, | Ordinary meaning | Ordinary meaning |
| rotating said coated glass tube about its longitudinal axis by a rotating device; | Ordinary meaning | Ordinary meaning |
| and heating said rotating coated tube to collapse said tube into a solid preform | See Claim 1 | Ordinary meaning |
| having **substantially the same length as said predetermined length** | See Claim 1 | See Claim 1 |
| whereby the glass coating layer becomes a core having a higher index of refraction than the refractive index of said tube. | Ordinary meaning | Ordinary meaning |
| **Claim 16** | | |
| 16. The method of claim 15 wherein | Ordinary meaning | Ordinary meaning |

- 17 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| said heating step is accomplished by passing a heat source along the length of said tube. | | |
| **Claim 17** | | |
| 17. The method of claim 15 wherein said core includes germania and silica. | Ordinary meaning | Ordinary meaning |

- 18 -

Exhibit A

II.    U.S. Patent No. 5,298,047

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| **Claim 1** | | |
| 1. A method of making an optical fiber comprising | Preamble | Preamble |
| a) providing an optical fiber **preform**; | A glass structure from which an optical fiber may be drawn. Specification of the '047 patent at: Col. 2, L. 31-39; Col. 3, L. 46-49; Fig. 1. | The glass structure introduced into a fiber drawing tower from which fiber is drawn.<br><br>**Intrinsic Evidence**<br><br>'047 patent: 2:30-35, 3:45-49.<br><br>'881 patent (child of '047 patent): 2:36-41, 3:51-55.<br><br>'881 file history (child of '047 patent): 132 Affidavit, pp. 1-4 (FIT01 008620-3).<br><br>**Extrinsic Evidence**<br><br>Deposition of Mr. Richard Huff Conducted on June 13, 2005 (the "Huff Depo."): p. 14, lines 8-19, p. 18, lines 14-21, p. 43, lines 3-13, p. 47, lines 1-9, p. 48, lines 10-13.<br><br>MacChesney Depo.: p. 47, lines 11-15, p. 60, lines 16-22, p. 86, lines 13-19, p. 87, lines 12-15, p. 88, line 24 – p. 89, line 15; p. 90, lines 3 – p. 93, |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | | line 24, p. 101, line 22 – p. 103, line 1, p. 117, line 7 – p. 118, line 2. |
| b) heating at least a portion of said **preform**; | Ordinary meaning | Ordinary meaning |
| and c) drawing optical fiber from the heated **preform** such that a spin is impressed on the fiber; | Ordinary meaning | See above. |
| wherein d) step c) comprises, while **maintaining the preform rotationally stationary**, | Rotational torque is applied to the fiber which is not overcome by rotational torque applied by the preform.<br><br>Specification of the '047 patent at: Col. 2, L. 30-44; Col. 4, L. 10-18<br><br>File History of the '047 patent at: Amendment, Sept. 13, 1993, p. 3. | The glass structure from which optical fiber is drawn does not move in a circular pattern during the process of drawing fiber.<br>**Intrinsic Evidence**<br>'047 patent: 1:49-2:2, 2:52-54.<br>'047 file history: Amendment and Response, Sep. 10, 1993, pp. 1-4 (FIT01 008671-4).<br>'881 patent (child of '047 patent): 1:54-26, 2:57-9.<br>'881 file history (child of '047 patent): Preliminary Amendment, Oct. 3, 1994, pp. 1-3 (FIT01 008617-9); 132 Affidavit, pp. 1-4 (FIT01 008620-3).<br>**Extrinsic Evidence**<br>Webster's II New College |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| applying a torque to the fiber, said torque causing the fiber to undergo rotation around the longitudinal axis of the fiber | Rotational torque is applied to the fiber which is not overcome by rotational torque applied by the preform.<br><br>Specification of the '047 patent at: Col. 2, L. 30-44; Col. 4, L. 10-18<br><br>File History of the '047 patent at: Amendment, Sept. 13, 1993, p. 3. | Dictionary, 2001, p. 660 (definition of "maintain"), p. 964 (definition of "rotation"), & pp. 1077-1078 (definition of "stationary").<br><br>Ordinary meaning |
| such that the spin is impressed on the fiber as it is drawn from the preform, | Ordinary meaning | Ordinary meaning |
| wherein the torque is applied such that **the spin impressed on the fiber does not have a constant spatial frequency.** | A spin impressed on at least part of the fiber which does not have a constant number of spins per meter or reverses direction.<br><br>Specification of the '047 patent at: Col. 3, L. 1-9, 24-30, 41-44; Col. 4, L. 20-22, 35-51; Col. 5, L. 8-22, 30-38; Col. 6, L. 6-10; Fig. 6. | Fiber satisfying this requirement must have an always changing number of spins per meter over the entire length of such fiber.<br><br>**Intrinsic Evidence**<br>'047 patent: 2:52-4, 3:5-9, 3:18-30, 3:41-44, FIG. 6, 5:23-37.<br><br>'047 file history: Amendment and Response, Sep. 10, 1993, pp. 1-4 (FIT01 008671-4). |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | | '881 patent (child of '047 patent): 2:57-9; 3:10-14, 3:24-36, 3:47-50, FIG. 6, 5:29-6:3. '881 file history (child of '047 patent): Preliminary Amendment, Oct. 3, 1994, pp. 1-3 (FIT01 008617-9); 132 Affidavit, pp. 1-4 (FIT01 008620-3). **Extrinsic Evidence** Webster's II New College Dictionary, 2001, p. 556 (definition of "impress"). |
| **Claim 2** | | |
| 2. Method according to claim 1, wherein | Preamble | Preamble |
| the torque is alternately applied in clockwise and counterclockwise direction, | Ordinary meaning | Ordinary meaning |
| such that the spin impressed on the fiber is alternately clockwise and counterclockwise. | Ordinary meaning | Ordinary meaning |
| **Claim 3** | | |
| 3. Method according to claim 2, wherein | Preamble | Preamble |
| step c) comprises coating the fiber | Ordinary meaning | Ordinary meaning |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| with a polymer coating and causing the coated fiber to contact a guide roller, | | |
| wherein the alternating torque is applied by means of said guide roller. | Ordinary meaning | Ordinary meaning |
| **Claim 4** | | |
| 4. Method according to claim 3, wherein | Preamble | Preamble |
| applying the torque by means of the guide roller comprises causing the guide roller to **oscillate about an axis that is substantially parallel to a fiber draw direction.** | Causing a guide roller to move back and forth about an axis which extends in a direction that is similar to the direction in which the fiber is drawn from the preform.<br>Specification of the '047 patent at: Col. 4, L. 22-33, 40-42; 67-68; Col. 5, L. 1-13; Figs. 3, 4 and 5. | Application of alternating torque to impress spin on fiber using the guide roller by swinging the guide roller back and forth of the guide a regular uninterrupted motion about an axis defined by a line perpendicular to the next page and emanating from the crossing point of the red "X" in the rendition of Figure 4 from the '047 patent below. |

- 23 -

Exhibit A



| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | | FIG. 4 |
| | | **Intrinsic Evidence**<br>'047 patent: FIG. 4, 4:67-5:8.<br>'881 patent: FIG. 4, 5:5-19.<br>**Extrinsic Evidence** |

- 24 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| | | Webster's II New College Dictionary, 2001, p. 775 (definition of "oscillate"). |

Exhibit A

III.  U.S. Patent No. 5,418,881

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| **Claim 1** | | |
| 1. An article comprising optical communication fiber with a spin impressed on the fiber; CHARACTERIZED IN THAT | Preamble | Preamble |
| the fiber is single mode optical fiber; | Ordinary meaning | Ordinary meaning |
| and in at least a portion of the fiber | Any part of the fiber, and not necessarily the entire fiber. | Any part of the fiber, and not necessarily the entire fiber. |
| the **spin impressed on the fiber is alternately clockwise and counterclockwise.** | A portion of the fiber having at least one clockwise spun portion changing into a counterclockwise spun portion where the change is made in 20 meters or less. Specification of the '881 patent at: Col. 2, L. 54-67; Col. 5, L. 1-28. File History of the '881 patent at: Preliminary Amendment, October 3, 1994, p. 2. Extrinsic Evidence to counter Defendants: Hart Trans., pp. 43-46, 48. | To satisfy this limitation fiber must include clockwise and counterclockwise turns occurring in succession, the turns being transmitted to the fiber as it is drawn from the draw tower. **Intrinsic Evidence** '047 file history (parent of the '881 patent): Amendment and Response, Sep. 10, 1993, pp. 1-4 (FIT01 008671-4). '881 patent: Abstract, 4:66-5:4, 5:14-19, 5:36-6:3. '881 file history: Preliminary Amendment, Oct. 3, 1994, pp. 1-3 |

- 26 -

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| **with a spin repeat distance of at most 20 m.** | | (FIT01 008617-9); 132 Affidavit, pp. 1-4 (FIT01 008620-3). **Extrinsic Evidence** Webster's II New College Dictionary, 2001, p. 556 (definition of "impress"), p. 33 (definition of "alternately"). "of at most 20 m" is plain on its face and requires no construction. "spin repeat distance" is indefinite. **Evidence (Indefiniteness)** '881 patent: 2:54-56. '881 file history: Preliminary Amendment, Oct. 3, 1994, pp. 1-3 (FIT01 008617-9); 132 Affidavit, pp. 1-4 (FIT01 008620-3). Huff Depo.: p. 56, lines 17-24. Deposition of Mr. Arthur Hart Conducted on June 15, 2005, p. 23, line 25 – p. 26, line 3 & pp. 42-48. Plaintiff's Preliminary Proposed Claim Construction, p. 4. |

Exhibit A

| Claim Language | Plaintiff's Claim Construction | Defendants' Claim Construction |
|---|---|---|
| **Claim 2** | | |
| 2. Article according to claim 1, wherein | Preamble | Preamble |
| said single mode optical fiber has a polarization mode dispersion (PMD) with the PMD of the fiber being less than 0.5 ps/km$^{1/2}$. | Ordinary meaning | Ordinary meaning |
| **Claim 3** | | |
| 3. Article according to claim 2 wherein | Preamble | Preamble |
| the article is an optical communication system that comprises an optical signal source | Ordinary meaning | Ordinary meaning |
| a length of optical fiber comprising said single mode optical fiber | Ordinary meaning | Ordinary meaning |
| and an optical signal detector | Ordinary meaning | Ordinary meaning |
| with said length optical fiber signal-transmissively connecting said source and said detector. | Ordinary meaning | Ordinary meaning |
| **Claim 4** | | |
| 4. Article according to claim 1 wherein the <u>repeat distance</u> is at most 13.2 m. | See Claim 1 | See Claim 1 |

- 28 -